22MAG02639

Approved: _____
ASHLEY C. NICOLAS
Assistant United States Attorney

ORIGINAL

Before:   HONORABLE ROBERT W. LEHRBURGER
          United States Magistrate Judge
          Southern District of New York

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :   COMPLAINT
                                    :
            -v.-                    :   Violations of 18 U.S.C.
                                    :   §§ 371, 922(a)(3),
SAMUEL MARTINEZ,                    :   924(n), and 2.
                                    :
                                    :   COUNTY OF OFFENSE:
            Defendant.              :   NEW YORK AND BRONX
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        MICHAEL BONNER, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

**COUNT ONE**
(Firearms Trafficking Conspiracy)

        1.  In or about March 2022, in the Southern District of New York and elsewhere, SAMUEL MARTINEZ, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, trafficking in firearms in violation of Title 18, United States Code, Section 922(a)(1)(A).

        2.  It was a part and an object of the conspiracy that SAMUEL MARTINEZ, the defendant, and others known and unknown, not being licensed importers, licensed manufacturers, and licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of importing, manufacturing, and dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A).

Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, SAMUEL MARTINEZ, the defendant, together with others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about March 7, 2022, SAMUEL MARTINEZ, the defendant drove from Brooklyn, New York to Tennessee, via the Verrazano-Narrows Bridge, in order to obtain firearms intended for resale in New York.

b. On or about March 9, 2022, MARTINEZ drove from Tennessee to Brooklyn, New York, via the Verrazano-Narrows Bridge, in possession of firearms that he obtained in Tennessee and intended to resell in New York.

c. On or about March 16, 2022, MARTINEZ sent text messages to, and spoke with, an undercover law enforcement officer ("UC-1") — who was located in the Southern District of New York and conveyed the same to MARTINEZ — in an effort to set up a firearms sale.

(Title 18, United States Code, Section 371.)

**COUNT TWO**
(Interstate Transport of Firearms)

4. In or about March 2022, in the Southern District of New York and elsewhere, SAMUEL MARTINEZ, the defendant, not being a licensed importer, licensed manufacturer, licensed dealer, and licensed collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly transport into or receive in the State where he resides a firearm purchased or otherwise obtained by MARTINEZ outside that State to wit, MARTINEZ, a resident of New York state who is not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms, transported seven firearms from Tennessee into New York with the intent to resell the firearms in New York.

(Title 18, United States Code, Sections 922(a)(3) and 924(n).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

5.  I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In the course of this investigation, I have learned, among other things, the following:

6.  Based on my conversations with a confidential source ("CS-1")[1] and my review of reports prepared by other law enforcement officers, I have learned the following:

   a.  On or about March 7, 2022, CS-1, acting at the direction of law enforcement, had a telephone conversation with SAMUEL MARTINEZ, the defendant, during which MARTINEZ informed CS-1 that he (MARTINEZ) was planning to travel to Virginia to meet with his firearms supplier ("CC-1"). MARTINEZ advised CS-1, in sum and substance, that he would be receiving seven firearms from CC-1, who would be bringing the firearms from Tennessee. MARTINEZ explained, in sum and substance, that he planned to bring the firearms back to New York to sell to an individual known to both MARTINEZ and CS-1, who was in fact an undercover law enforcement officer ("UC-1").

   b.  Later in the day, on or about March 7, 2022, CS-1 had a second conversation with MARTINEZ during which MARTINEZ informed CS-1, in substance and in part, that his (MARTINEZ's) plans had changed, and he now intended to drive all of the way to Tennessee to pick up firearms from CC-1.

   c.  On or about March 9, 2022, shortly after MARTINEZ returned from Tennessee, CS-1, acting at the direction of law enforcement, met with MARTINEZ inside a Nissan Altima (the "Nissan"), parked in Brooklyn, New York. During the meeting, MARTINEZ showed CS-1 seven firearms (the "Firearms")

---

[1] CS-1 is a paid informant for HSI and is receiving immigration benefits. Information provided by CS-1 has proven reliable and has been corroborated in part by independent evidence, including recorded conversations and surveillance.

that he had acquired from CC-1 while in Tennessee. MARTINEZ told CS-1, in sum and substance, that CC-1 had given MARTINEZ the Firearms on an advance and that MARTINEZ owed CC-1 approximately $7,000. MARTINEZ further explained that he intended to sell the first four of the Firearms to UC-1 and that he planned to move the Firearms from the Nissan to his white Econoline van (the "White Van") and ultimately into his home.

7. Based on my conversations with UC-1 and CS-1, my review of reports prepared by UC-1, and my participation in surveillance as well as the arrest of SAMUEL MARTINEZ, the defendant, I have learned the following:

a. On or about March 11, 2022, UC-1 and SAMUEL MARTINEZ, the defendant, exchanged text messages in Spanish, discussing, in substance and in part, the price of four "tools" and the availability of "chocolate." During these text messages, MARTINEZ told UC-1 that "three short ones" had arrived. Based on my training and experience, as well as my participation in this investigation, I understand MARTINEZ's reference to "tools" to be a reference to firearms, the reference to "short ones" to be a reference to handguns, and the reference to "chocolate" to be a reference to heroin.

b. On or about March 16, 2022, UC-1 — who was located in the Southern District of New York — exchanged text messages with MARTINEZ during which MARTINEZ sent pictures of four firearms that he was offering for sale to UC-1 and coordinated the logistics of a sale to take place the following day.

c. On or about March 17, 2022, at approximately 6:45 p.m. MARTINEZ called CS-1 and, in substance and in part, asked CS-1 to give him a ride in CS-1's vehicle (the "CS Car") to go to sell the Firearms to UC-1. CS-1 agreed and met MARTINEZ in the vicinity of MARTINEZ's residence, near 58th Street in Brooklyn, New York (the "MARTINEZ Residence").

d. At approximately 7:00 p.m., MARTINEZ met CS-1 outside of the MARTINEZ Residence. MARTINEZ loaded two boxes into the trunk of the CS Car and entered the CS Car through the front passenger door.

e. At approximately 7:05 p.m., law enforcement conducted a traffic stop of the CS Car, near the MARTINEZ Residence. Law enforcement immediately recovered two boxes from the truck of the CS Car. The first box contained three handguns and ammunition. The second, larger box, contained a shotgun.

4

Law enforcement then placed MARTINEZ under arrest.

8. Based on my participation in the arrest of SAMUEL MARTINEZ, the defendant, as well as my participation in the search of the MARTINEZ Residence pursuant to a search warrant, I know, among other things, the following:

a. On or about March 17, 2022, law enforcement searched the MARTINEZ Residence (the "Search") pursuant to a search warrant authorized by United States Magistrate Judge James R. Cho in the Eastern District of New York.

b. During the Search, law enforcement recovered, among other things, (i) mail addressed to SAMUEL MARTINEZ, the defendant, from CC-1 at an address in Tennessee and (ii) keys to the White Van.

c. During the Search, law enforcement exposed a canine (the "K9")[2] to the exterior of the vehicles parked outside the MARTINEZ Residence. The K9 gave a positive indication at the White Van, discussed ¶ 6(c), *supra*. Law enforcement searched the White Van and recovered three additional firearms bringing the total to seven recovered firearms.[3] Law enforcement also recovered ammunition and a small bag containing a white powder-like substance which appears to be cocaine.

9. Based on my participation in the arrest of SAMUEL MARTINEZ, the defendant, I know, among other things, that after he was arrested, MARTINEZ was transferred to the 72nd Precinct where he was informed of and waived his *Miranda* rights. MARTINEZ agreed to participate in a video recorded interview during which he stated, in substance and in part, that (i) during the week of March 7, 2022 he drove from New York to Tennessee to obtain firearms, via the Verrazano-Narrows Bridge, (ii) during the week of March 7, 2022, he drove from Tennessee to New York with the firearms, via the Verrazano-Narrows Bridge,

---

[2] The canine was NYPD canine Russel. In or around 2019, K9 Russel was certified by the State of New York to detect , among other things, the odor of bones, firearms, gun powder, smokeless powder, gun oils, and human blood. In or around November 2021, K9 Russel was also certified by FEMA.

[3] The firearms are as follows: Ruger DC-9, Ruger Security 9mm, CPX-2, CCY 9mm, Taurus G2C 9mm, Taurus PT111 Pro 9mm, Weihrauch revolver 38 special, and a RZ17 Tactical 12G shotgun.

and (iii) that he had previously — approximately one year earlier — traveled to Tennessee to obtain firearms.

10.  Based on my conversation with an ATF Agent who consulted an ATF database, I know that SAMUEL MARTINEZ, the defendant, does not have a license to import, manufacture, deal in, or collect firearms.

WHEREFORE, deponent respectfully requests that SAMUEL MARTINEZ, the defendant, be imprisoned or bailed, as the case may be.

MICHAEL BONNER
Special Agent
Homeland Security
Investigations

Sworn to me by reliable
electronic means this
18th day of March, 2022

HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK